**Frank Joseph FLOWERS, dba X–Press, Appellant,**

v.

**TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellee.**

**No. 09–88–286 CV.**

Court of Appeals of Texas, Beaumont.

Dec. 21, 1989.

Application for Writ of Error filed Jan. 22, 1990.

Bruce Smith, Larry Thorne, Smith & Thorne, Beaumont, for appellant.

Jerry S. Wright, Willard J. Hall, Jr., Beaumont, W. Reed Lockhoof, Asst. Atty. Gen., Austin, for appellee.

**OPINION ON MOTION FOR REHEARING**

BROOKSHIRE, Justice.

Our original opinion of August 31, 1989, has been reported in 777 S.W.2d 781. That opinion, we think, is correct now and when written.

On September 29, 1989, the Appellant filed a late motion to supplement the record stating that the counsel for Appellant had requested of the clerk of the 172nd District Court that the record be completed for filing with the appellate court.

The motion sets out that the record in the cause included both the transcript from the district court and the statement of facts from the constitutional county court, which had been forwarded from the county court to the district court for review. The motion recites that, in the latter part of October, 1988, the appellant received a letter from the Clerk of the Ninth Court of Appeals stating that a statement of facts (1 vol.) had been forwarded to the court of appeals. There were, actually, two volumes of the statement of facts. Nevertheless, the Appellant contended in his motion that, reasonably and in good faith, he believed the record was complete.

We adhere to our prior opinion that it is the duty of the Appellant to cause a complete statement of facts to be filed with the Clerk of the Court of Appeals. *TEX.R. APP.P. 53(k)*. Nevertheless, in an effort to afford a complete appellate review, we

permitted a late filing of the statement of facts of the hearing conducted on June 9, 1988, before the County Court of Jefferson County. We have reviewed this additional Statement of Facts and have carefully read and analyzed the evidence given by Frank Joseph Flowers, Charles W. Bordeman, Thomas A. Walston, Carolyn C. Parmley, Katie Colley, Susan Laraine Cessac, J.S. Rayburn, Willard J. Hall, Sr., and Lori Leister. We decide that the record and Statement of Facts made before the County Judge sustains his findings and rulings.

Ample, if not voluminous, evidence of strong, probative force sustains the County Judge's refusal to issue the license. Among other important matters, the record shows that, across the street, and within a short distance from the proposed X–Press Lounge, was located a night depository of a large utility company wherein bills were paid after regular office hours. Approximately $250,000. in currency per month was deposited therein. The nearby large utility company owned the building in which about 150 employees worked. Many of these were females. Many worked at night. Some of the tenants (not employees of the utility), in the utility company's building, also worked at night and parked their cars in a parking lot across the street from the proposed X–Press Lounge. There was evidence, repeated from several witnesses, that the employers feared for the safety of their female employees who worked at night.

The First Federal Savings and Loan Association was across another street from the proposed lounge. It, likewise, had a night depository. There was a large downtown church within about one block from the proposed location of the lounge. The congregation met regularly on Sunday nights. In the late fall and winter seasons, the Sunday night services began after darkness fell. The church also provided a day care center for children. These children were taken on field trips. Some of these field trips were accomplished by the children walking down Pearl Street to the public library or the Beaumont Art Museum, walking past the site of X–Press.

The day care center for small children kept some of the children as late as 6:30 P.M. to accommodate their working mothers. During the winter season, at 6:00 or 6:30 P.M., these working mothers necessarily had to pick up their children after dark. The record compellingly reflects that some of the church officials were very concerned that the existence of the X–Press Lounge would discourage the penitents of the congregation from attending the evening services held after dark. The congregation of the church involved were shown to be made up of many elderly members. One witness testified that over forty percent of this congregation were of ages 60 years or more. During these evening or night church services, there had been vandalism of automobiles that were parked in the parking lot of the church. Throughout the years, there were numerous committee meetings and board meetings that were held at the church, especially on Wednesday nights. To summarize, the evidence showed that the establishment of the X–Press Lounge would probably adversely affect the activities of the church. This church had a membership of approximately 1200 to 1400 penitents.

The director of the child care center, Ms. Parmley, testified that there were 135 children of tender age in the program. Some of the children were quite young. One four-week-old child attended. The average age of the children is from 2 to 5 years. Most of these very young children were picked up by 6:00 o'clock, or, by the latest, 6:30 P.M. Mr. Flowers reserved the right to operate his bar starting at 5:00 P.M. or earlier. There was evidence before the county judge and before the district judge that the traffic flow in the block was congested and that there would be added congestion of traffic.

Furthermore, there was a safety factor in carrying the day care children back and forth and in picking up the children.

Mr. Flowers testified that his present intention was to open at 8:00 o'clock at night, preserving the right, however, to open at an earlier hour. The lounge was to conduct business until 2:00 o'clock A.M.

It is noteworthy that the Appellant never discharged his duty to file the correct, complete statement of facts with our Clerk. The only properly and timely filed statement of facts was the one reflecting the hearing on September 6, 1988, before the presiding judge of the 172nd District Court of Jefferson County. This brief statement of facts, consisting of only 17 pages, is merely a record of the arguments of the attorneys. The same contains no evidence or testimony. *TEX.R.APP.P. 53(k)* mandatorily provides that it is the Appellant's duty to cause a statement of facts to be filed with the Clerk of the Court of Appeals. Appellant failed in his duty to file with our Clerk the only meaningful and relevant Statement of Facts, which was the statement of facts covering and reporting the June 9, 1988, hearing before the County Judge of Jefferson County. This statement of facts, made before the County Judge, was not filed until November 8, 1989. Hence, the meaningful, crucial statement of facts was not timely filed. *TEX.R. APP.P. 50(d), 53, 54(a).*

The dissent places major reliance on *State v. Peeler*, 200 S.W.2d 874 (Tex.Civ. App.—Fort Worth 1947, no writ). *Peeler, supra,* cites a section of the then Penal Code which is not now governing of our record. Furthermore, the dissenter is simply in error in reciting that establishments serving alcoholic beverages are closer to the First United Methodist Church and the Day Care Center than the proposed location of the Appellant's bar. There simply is no discrimination shown in this record against the Appellant. The dissenter's cavalier statement that "[t]he concerns about the night depositories, the day care center, the late-working employees, and the church goers are inherent in any downtown location", is simply overbroad and actually deeply erroneous. We are not aware of any 24–hour soup kitchen for transient persons or homeless persons or a counseling center for heroin addicts near the Gulf States Utilities Company, the First United Methodist Church or the Day Care Center. We doubt that the 24–hour soup kitchen or counseling center for heroin addits would serve alcoholic beverages. Inter alia, we

conclude that there was substantial evidence and testimony of strong probative force to sustain the Findings of Fact and Conclusions of Law signed on August 10, 1988, by the County Judge and especially that the proposed X–Press Bar "is likely to constitute a threat to the general welfare, health, peace and safety and sense of decency of the people."

In summary, after reviewing the entire record (including the supplement) before us, we approve and affirm the actions of the County Court and the actions of the District Court below.

AFFIRMED.

BURGESS, Justice, dissenting.

At the onset, I disagree with the majority's assessment that the original opinion, 777 S.W.2d 781 is still correct. That opinion was based on the premise that appellant failed to file a statement of facts, as noted by the court, when it stated at page 783: "In reality, we have nothing to review...." Now that we have a statement of facts, that prior opinion, while it reaches the same result of the majority in this opinion, can no longer be correct.

Aside from this trivial disagreement, I respectfully dissent to the affirmance. The test to be used in liquor license cases was set forth in *State v. Peeler*, 200 S.W.2d 874, 879 (Tex.Civ.App.—Fort Worth 1947, no writ):

[t]he county judge cannot discriminate between parties upon equal footing, even though the [Texas Liquor Control] Act rightfully gives the county judge wide latitude and discretion in making his ruling, yet the order cannot discriminate against an applicant unless there is reasonable basis for it. In order to deny a license, there must be some factual basis to show an unusual condition ... as well as the failure of the applicant to meet any one of the requirements as set out in the Act.

Nowhere in the majority opinion do they address this "unusual condition" test. Appellant established that he possessed all the requirements and qualifications for the is-

suance of the on-premise consumption license. The location was in a "wet" area under the law and there had been no objection to the license from either the City of Beaumont or the Texas Alcoholic Beverage Commission. Appellant showed there were several establishments within a one-half mile radius that sold alcoholic beverages. A restaurant was within a block and a night club was a little over a block away. Another night club was within three blocks as was a package liquor store. With the exception of the night depository for Gulf States Utilities, there were establishments serving alcoholic beverages closer to the church, the day care center and the First Federal night depository than the proposed location of appellant's business. Certainly traffic flow and parking in a downtown area is not an unusual condition especially in light of appellant's testimony that he was negotiating for leased parking. There is no requirement that an applicant correct existing traffic conditions or select a location that is virtually free of traffic problems. *Kermit Concerned Citizens Committee v. Colonial Food Stores Inc.*, 650 S.W.2d 208, 210 (Tex.Civ.App.—El Paso 1983, no writ). *See also In re Simonton Gin, Inc.*, 616 S.W.2d 274, 276 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ).

If there is no unusual condition to justify the denial of an application, the denial results in discrimination between the applicant and other permitees. *Texas Alcoholic Beverage Commission v. Mikulenka*, 510 S.W.2d 616, 619 (Tex.Civ.App.—San Antonio 1974, no writ); *Elliott v. Dawson*, 473 S.W.2d 668, 671 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ); *Morton v. Plummer*, 334 S.W.2d 322, 324 (Tex.Civ.App.— Austin 1960, no writ). There was no substantial evidence to deny the issuance of the license for the sake of the "general welfare, health, peace, morals, safety, and sense of decency of the people", *TEX. ALCO.BEV.CODE ANN. sec. 61.42(a)(3)* (Vernon Supp.1989), in view of the area and the other establishments. The concerns about the night depositories, the day care center, the late-working employees, and the church goers are inherent in any downtown location. Certainly those concerns were there with or without appellant's new business. There are any number of businesses, that do not require a liquor license, which could generate the same (or greater) concerns, e.g., a twenty-four hour "soup kitchen" for the transient and homeless or a counselling center for heroin addicts.

In summary, I do not find any substantial evidence that the issuance of the license would create any unusual condition to justify its denial. Therefore, I would reverse and render in favor of appellant; because the majority does not, I respectfully dissent.